## John Elliot et al., Appellees, v. Frederick O. Swannell et al., Appellants.

### Gen. No. 15,041.

PARTNERSHIP—*when established.* *Held,* that the evidence in this case, which showed a joint undertaking having for its object the acquisition of mining property, established, as to the plaintiffs, the relation of partners between the defendants.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed April 18, 1910.

LOOMIS, McMAHON & GRABER, for appellants.

ALDEN, LATHAM & YOUNG, for appellees.

MR. JUSTICE BAKER delivered the opinion of the court.

Plaintiffs, solicitors at Nelson, British Columbia, brought an action of *assumpsit* in the Circuit Court against appellants and one Wollin for services as solicitors alleged to have been rendered by them to defendants. The pleas were *non assumpsit* by all of the defendants, a joint plea by Lausten and Wollin denying joint liability with each other or with the other defendants, and separate pleas by Swannell and Sherlock denying joint liability with any of the other defendants. While the suit was pending the death of Wollin was suggested on the record. A trial by the court resulted in a finding and judgment for $350 against Swannell, Sherlock and Lausten, to reverse which they prosecute this appeal.

In 1899 the defendants lived in Chicago. In September of that year, McCulloch, a mining broker at Nelson, B. C., came to Chicago and submitted to Swannell a mining proposition. He appears to have convinced Swannell that Beer Brothers of Nelson had leases on and options to purchase a group of mines situated

about 150 miles from Nelson, which expired in July, 1900; that he, McCulloch, had an option to purchase said mines for $75,000, to become operative at the expiration of the Beer's option; that at the mines were a hundred tons or more of ore of great value, but which could not be taken to market because there was no road or trail from the mines; that with $5,000 he could secure an assignment of the Beer lease and of the ore at the mine, obtain possession of and operate the mines and thereby ascertain their value before the expiration of the Beer's option, construct a "raw hide" trail from the mines and thereby market the ore then on hand and that thereafter to be mined, and that from the sales of the ore the $5,000 could be repaid and great profits in addition thereto made and realized. Through Swannell the other defendants were induced to take an interest in the proposition so submitted by McCulloch. That Swannell and Sherlock each contributed $2,750 and Wollin $625 is admitted. We think that from the evidence the court might properly find that Lausten contributed $625. Briggs and McCulloch were to go to Nelson and render their services in securing such leases and options and in the development of the mines without remuneration, except for their necessary personal expenses, until the amounts so contributed should be repaid to the contributors. After all of said money had been repaid Briggs and McCulloch were to receive salaries, if they were retained. It was further agreed that the profits arising from the sale of the ore on hand and from the operation of the mines, after the repayment of the money so contributed, should be divided as follows: Briggs 10%, Wollin 5%, McCulloch 25%, Lausten 5%, Sherlock 27½%, Swannell 27½%, and that when the value of the mines was determined if it was decided to acquire and operate them a corporation should be formed, and that each of said parties should receive the same percentage of all the stock issued to all said parties that he was to receive of the profits. No part

of the money so contributed was to be paid to McCulloch, and none was paid to him, but it was all placed in the hands of Briggs. It was further agreed between said parties that the agreement between them did not constitute a partnership. Briggs went to Nelson in October, 1899, secured an assignment to himself of the Beer's leases and options, and proceeded to operate the mines in the name of the "Beatrice Mines", and opened with a bank at Nelson an account in the name of "C. H. Briggs, trustee", in which he deposited the money received from the contributors and from the sale of ore and from which he paid expenses incurred in operating the mines. In thus acquiring said leases and options and in the operation of the mines Briggs was assisted by McCulloch.

It was important to defendants not only that they should learn the value or probable value of the mines by operating them in order to determine whether they should purchase them, but that they should be advised as to the validity of the leases and options they proposed to acquire. Briggs testified that he did not retain plaintiffs, but it appears from his testimony that he was at their offices at Nelson and saw one of the plaintiffs make a memorandum on a draft of a proposed contract between the defendants and himself and McCulloch, which Swannell had prepared. Lennie, one of the plaintiffs, testified positively that he was employed by Briggs to act for defendants in connection with the negotiations for the leases and options for said mines and to look after their interests while work was in progress at the mines. The services rendered were such as are usually required of a solicitor by a person who contemplates acquiring an interest in and operating a mine. They consisted in the examination of title papers, drawing and revising contracts and other documents in relation to the mines, consultation and advice as to matters in relation to the mines, application to the government of British Columbia for a refund of money expended on a wagon

road and services in relation to such application. We think that from the evidence the court might properly find that plaintiffs were employed to act for the defendants.

The principal ground of reversal urged is that the evidence does not show that the defendants were copartners.

It is clear that the transaction was not a loan of money by defendants to McCulloch. No part of the money was paid to him nor any promise, express or implied, made by him to repay the money to defendants. Wollin died pending the suit and the judgment was properly rendered against the remaining defendants if the evidence is sufficient to warrant and support a finding that as between them and plaintiff they were co-partners.

We think that under the evidence in the record the defendants were properly held liable as co-partners to the plaintiffs. Swannell v. Byers, 123 Ill. App. 545.

The record is, we think, free from error and the judgment is affirmed.

*Affirmed.*